1 F.3d 1242
 1993 O.S.H.D. (CCH) P 30,172
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis R. CRAWFORD, Defendant-Appellant.
 No. 92-6449.
 United States Court of Appeals, Sixth Circuit.
 Aug. 11, 1993.
 
 Before: NELSON and NORRIS, Circuit Judges; and FRIEDMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Dennis Ray Crawford, appeals his convictions for conspiring to violate, and violating as an aider and abettor, federal laws setting mandatory health and safety standards for the operation of coal mines. The convictions followed his trial by jury.
 
 
 2
 Defendant, his son Danny Crawford, his nephew Timothy Crawford, and a corporation, Steel Hollow Mining, Inc., were all charged by the grand jury with conspiracy, as well as a number of counts for violations of various safety standards. All were found guilty of a number of the substantive violations, but only defendant and the corporation were found guilty on the conspiracy count.
 
 
 3
 Defendant's most serious challenge to his conviction is his contention that the government failed to produce sufficient evidence to prove that he conspired to violate mine health and safety laws. He maintains that there was no evidence that he agreed with anyone to violate mining laws, and that proof of an agreement is an essential element of a conspiracy. According to defendant:
 
 
 4
 The only evidence on this element is that he was seen outside the mine on a regular basis, and that he, on occasion, gave unspecified "orders" to Danny [Crawford] or to Gary Miles. This evidence does not come close to showing beyond a reasonable doubt that Ray had an agreement ... to violate the law.... Even the questionable and biased testimony of Gary Miles that Ray wanted ten loads of coal produced per day and that he would send Danny to show him how to do it, does not meet this standard.
 
 
 5
 Defendant is correct when he says that an element the government was required to prove on the conspiracy count was that he agreed to cooperate with at least one other person to commit a crime. The proof required of the government was pointed out by the district judge in his instructions to the jury:
 
 
 6
 This does not require proof of any formal agreement, written or spoken, nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and talked about common interests or engaged in similar conduct is not enough to establish a criminal agreement. These are things that you may consider in deciding whether the government has proven an agreement, but without more, they are not enough.
 
 
 7
 What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to violate a mandatory coal mine safety standard as charged in the indictment. This is essential. An agreement can be proved indirectly by facts and circumstances which lead to a conclusion that an agreement existed. But it is up to the government to convince you that such facts and circumstances existed in this particular case.
 
 
 8
 Although the government's proof that addressed this element may not have been compelling, it nevertheless was sufficient to permit a jury to find, beyond a reasonable doubt, that defendant had agreed to cooperate in violating mine safety standards.
 
 
 9
 The evidence at trial showed that defendant was the owner and operator of the mine and was present at the mine on a daily basis. His son, Danny, and his nephew, Timothy, directed the work force for him. Citations for unsafe mining practices had been served on defendant by government inspectors, and on several occasions, miners had advised him of unsafe operating conditions. From this evidence, one reasonably could conclude that defendant was involved in the day-to-day management and operation of the mine (if not in direct supervision of the work of the miners underground), gave some form of general direction on the operation of the mine to his son and nephew, and knew that from time to time unsafe conditions and practices existed at the mine (albeit most all the ones of which he was made aware were corrected). This evidence, by itself, would not prove the existence of the required agreement, but there was more.
 
 
 10
 Gary Miles, a mine foreman, testified extensively about unsafe practices at the mine. Although, as the government concedes, Miles' "credibility was severely impeached" by evidence that he had solicited a bribe from the Crawfords in return for not testifying for the government, his testimony illustrated defendant's participation in the unsafe practices. It was up to the jury to judge Miles' credibility, and, as pointed out by the government, the specific parts of Miles' testimony relating to defendant's involvement in the conspiracy were not effectively challenged. Furthermore, Miles' testimony about defendant's role in the safety violations was corroborated, at least to the extent that it was consistent with the testimony of the miners about the orders they received and the unsafe practices that occurred.
 
 
 11
 When Miles' testimony is viewed in a light favorable to the government, the jury had before it evidence sufficient to prove defendant's personal involvement in creating unsafe conditions at his mine. Miles testified that defendant gave his foremen daily production instructions and goals. Safety procedures could be followed so long as the miners were required to produce only five truckloads of coal a day, Miles explained, but when coal prices increased, defendant ordered Miles to produce ten loads a day. Miles attempted to reach the new production goal, but was unable to do so and informed defendant that based on his experience, there was no way to produce that much coal and still use safe mining methods. According to Miles, defendant responded that he didn't care what it took to get out the extra coal and told Miles he would send Danny Crawford into the mine to teach him how to increase coal production. When Danny Crawford arrived at the mine and took control from Miles for several weeks, he instructed Miles and the miners to use methods that were unsafe in order to reach the ten truckload target. When this testimony is considered together with the rest of the government's evidence against defendant, the jury could find that defendant had agreed to cooperate in violating mine health and safety laws.
 
 
 12
 Defendant next contends that a corporation cannot conspire with its sole officer, and defendant could not be convicted of conspiracy when the other individual codefendants were acquitted of that offense. However, defendant was not the corporation's sole officer, as the government presented evidence that defendant's son and nephew, who also were charged with conspiracy, were agents of the defendant corporation, within the meaning of 30 U.S.C. Secs. 820(c) and 802(e). There was evidence from which the jury could have concluded that defendant conspired with his son and nephew in their capacity as agents of the corporation. Therefore, defendant could be convicted of conspiring with his corporation to violate mine safety laws. The "rule of consistency" cited by defendant has no application to the circumstances of this case.
 
 
 13
 Defendant's third argument, that the district judge erred in denying his motion to be relieved from what he considered a prejudicial joinder, was not preserved for appeal, since the motion was not renewed at the close of all the evidence. United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987).
 
 
 14
 In view of our disposition of the first three errors assigned, we need not address the other arguments raised in defendant's brief.
 
 
 15
 For the reasons stated, the judgment of conviction is affirmed.
 
 
 
 *
 The Honorable Bernard A. Friedman, United States District Judge for the Eastern District of Michigan, sitting by designation